*293
 
 Ruffin, Chief Justice,
 

 having stated the case as above, proceeded as follows: Without statins: the evidence ulariy, it is sufficient to declare that the Court is satisfied, from it, that the statements of the bill of the fraudulent intents of the deed of trust from White to Bostick, and of the want of a consideration in that transaction, or in the subsequent sale from Bostick to Gwin, are not supported, but unfounded. The plaintiff has himself examined Bostick, and he declares his belief throughout the transactions and up to the time of giving his deposition, that the deed was a security for sums really due to Duke Gwin, or responsibilities incurred by him; and he says further, that he made the sale fairly, and that Thornton P. Gwin paid the sum he bid, namely. $531. In all this, that witness is supported by Duke Gwin, who has been examined by the defendants; and no witness testifies any thing to the contrary. The only circumstance of a contrary tendency is that of the credit on the deed of trust for $1,280:80, of even date with the deed. Neither party asked an explanation of this entry from either witness; and, by itself, it is not sufficient to overthrow the direct as-severations of those two witnesses as to the good faith of that instrument. If the entry was made at the time it bears date, it could not have been deceptive, because it is the same with the date of the instrument; and, when it was acknowledged and registered, would shew that too large a sum had been inserted, by mistake in drawing the deed, or that the debt had been reduced before the deed was executed. From the amount of the credit, however, it is probable the entry was made afterwards, and with the view of regulating the computation of interest, was dated back. It appears in the bill, that Duke Gwin was the surety for White for an injunction against the judgment on a bond for this plaintiff for $600; due 1st December, 1819; and, profiably, the penalty ofthe injunction bond would be about $1,280: Now, the bill states that the sum due on that judgment was raised by the sale of part of the negroes by the sheriff; and, consequently, it ought not to be raised again out of the other negroes, if this deed was really intended as an indemnity to Duke Gwin for that responsibility. He may. therefore, Kkve entered the credit
 
 *294
 
 just before the sale by the trustee, as a discharge of the trustee fr°m *^nty raising so much from the remaining ne-groes, or of suing the sheriff. We can, indeed, only conjecture, at this day, how the truth was. But, at all events, a
 
 3 J 3
 
 .
 
 3 3
 
 circumstance, from which inferences may be deduced so consistent with innocence, ought not to serve as proof of a fraud. In our opinion, therefore, it must be declared, that the deed to Bostick and the sale by him were fair and good, as against the plaintiff.
 

 Wheiher one can file a bill in the character of creditor ofa person stated to be a m'-rt^or, pTse'ofPi'e-ind ict i» to ■without alimiuin^ in, the mortgagee a "ood title, •wouicfseem to be incon-tbe scope sDch°abm°fl theTtie'of the person theredemp-sought.
 

 R ma7 ke a question, whether one can file a bill in the character of a judgment creditor of a person stated to be a _ , ° , . , \ . . , mortgagor, for the purpose ot being let in to redeem, without vtn§ to> or admitting in, the mortgagee a good title. It Would seem to be inconsistent with the scope and obiect of .
 
 so
 
 such a bill, to impeach the title of the person from whom the redemption is sought; and, perhaps, for that reason, we should proceed no further in this case. But. we think it best to pass this point, since it is always more satisfactory to dispose °f a cause upon its merits, or upon some point that would govern the decision, if the litigation should be renewed. In ° ° , . , our opinion, there is such a point in this case, which must always be fatal to the claim of the plaintiff, in whatever form r-jight be presented. Our allusion is to the effect of the lapse of time under the provisions of the act of 1826, ch. 28, Rev. St. ch. 65, sec. 14, as a bar to the plaintiff, although ^ sh°u^ be admitted there was an agreement for redemption between White and Gwin.
 

 Upon the existence of such an agreement, as a question of fact, the Court entertains, upon the evidence, a confident belief in the affirmative. It cannot be positively denied, any more than admitted, by the defendants, as they were not parties to it. They leave the plaintiff to his proof; and the plaintiff does prove, by two witnesses, that T. P. Gwin expressly informed them that he wished to purchase for the benefit of White, who was to have the power of redeeming; and that he requested them, therefore, not to bid against him, and they accordingly desisted. Besides this direct evidence, there is the circumstance. — vevy extraordinary, upon any other supposition — that $102 of White’s money was received from the' sheriff, and applied in part of the purchase money Gwin
 
 *295
 
 ought to have paid. An agreement for redemption also explains why White should have agreed to setting up the ne-groes in a lump, while persons desired them to be sold separately, and testify that, if they had been so sold, they would have brought nearly double the price they did.
 

 But, supposing the mortgage established, we think the time is fatal to the plaintiff. A judgment creditor can only redeem upon the footing of shewing a good subsisting mortgage, which the mortgagor could come into this Court and redeem. The right of the creditor is founded originally on the idea of tacking, so that the mortgagor cannot redeem from him without paying both the mortgage money and the judgment debt. If, therefore, the mortgagor be excluded from the-redemption, it cannot be open to his creditor — at all events, only under very special circumstances, if at all. Such circumstances the bill professes to bring forward, by accounting for the delay; because the plaintiff thought the dealings between White and Gwin fair towards him, and had no suspicion to the con-, trary, until he received the information of White’s intent, just before the beginning of the present controversy. But none of those allegations are admitted; nor has the plaintiff offered any evidence of their truth. This bill must, therefore, stand exclusively on the right of White himself. Now, as to him, the act of 1826 is a clear bar. This case falls under the last section, which provides for mortgages theretofore made, and enacts that “ where the right of action has accrued within' less than ten years, the presumption of payment, satisfaction, or abandonment shall arise within thirteen years from the accrual of the right of action.” Here there does not appear to have been any day of forfeiture fixed. The conveyance to Gwin was absolute upon its face; but there was a separate agreement between White and him, that he would convey to White, upon the payment of the principal and interest. That, either could have insisted on, in this Court, immediately. Of course, the time began from Gwin’s purchase, on the 11th day of December, 1820, and expired according to the statute, on the 11th day of December, 1833 — -nearly two years before the bill was filed. It is charged, however, that advantage was taken by Gwin of the criminality of White, in falsely
 
 *296
 
 taking the insolvent’s oath, to terrify him from an attempt to re(^eem> an<^ in<Iuce him to leave the State. But the plaintiff has offered no testimony of any undue means on the part of Gwin, to induce White to take such an oath, nor to make it the occasion of extorting from him the renunciation of his rights. In the absence of such evidence, the admitted feet that White did take the oath of insolvency, without making an assignment of any interest in these slaves, strongly corroborates the legal presumption from the lapse of time. It is not to be assumed that the oath was either corrupt or false; and, if not, then it establishes that the witnesses were mistaken, in supposing that there was an agreement for redemption; or that Gwin subsequently satisfied White for the equity of redemption; or that, for some other sufficient motive, the latter had abandoned the right. But, as the case goes off on this point of time exclusively, and White may have been ruled more by poverty than influenced by his own will, or the merits of the other party, the bill will be dismissed without costs.
 

 Per Curiam. Bill dismissed.